**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


RYAN DANIEL MALKOWSKI,  #275517,

        Petitioner,

v.                                Case No. 2:06-CV-14112
                                      Honorable George Caram Steeh
                                      Magistrate Judge Virginia M. Morgan

JAN E. TROMBLEY,

        Respondent.
_____/


<u>**OPINION & ORDER DENYING PETITION**</u>
<u>**FOR WRIT OF HABEAS CORPUS,  DECLINING TO GRANT A CERTIFICATE OF**</u>
<u>**APPEALABILITY & DECLINING TO GRANT AN APPLICATION FOR LEAVE TO**</u>
<u>**PROCEED ON APPEAL *IN FORMA PAUPERIS***</u>

      Petitioner, Ryan Daniel Malkowski, is a state inmate who at the time of filing his *pro se* habeas petition under 28 U.S.C. §2254, was  incarcerated at the Saginaw Correctional Facility in Freeland,  Michigan.  Petitioner was discharged from custody on July 24, 2009.[1]

He  was  convicted  after  his  Tuscola  County  Circuit  Court  bench  trial,[2]  of  attempted kidnaping, Mich. Comp. Laws §750.349.  Petitioner was sentenced as a third habitual

---

      [1]Article III, § 2, of the Constitution requires the existence of a case or controversy through all stages of federal judicial proceedings. This case or controversy requirement means that, throughout the litigation, the plaintiff "must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990). Where a habeas corpus petitioner challenges a conviction pursuant to which the petitioner is no longer incarcerated, collateral consequences sufficient to satisfy the case or controversy requirement will generally be presumed. *Sibron v. New York*, 392 U.S. 40, 55 (1968); see also *Gentry v. Deuth,* 456 F.3d 687, 693-95 (6th Cir. 2006). Thus, Petitioner's discharge does not render his petition moot.

      [2]Petitioner pled *nolo contendere* on May 25, 2004 to attempted kidnaping.

offender, Mich. Comp. Laws §769.11, to a term of three to ten years' imprisonment.   For

the reasons that follow, the Court will deny  the petition.

## I. BACKGROUND

Petitioner's conviction arises from a domestic violence dispute wherein he pled *nolo

contendere* to an attempt to "wilfully, maliciously, and without lawful authority, forcibly or

secretly confine [ ] or hurt Angela Yost within this state against her will."  (Tr. Arraign.,

3/15/03, at 3 & Tr. Plea, 5/25/04, at 6).

Following Petitioner's conviction, he filed a delayed application for leave to appeal

with the Michigan Court of Appeals raising the following claims:

> I. Is Defendant entitled to resentencing because the statutory sentencing guidelines were misscored as to offense variables 3, 4, and 19 as a matter of statutory interpretation and in violation of the Sixth Amendment, and the sentence imposed is an unjustified departure above the appropriate sentence range?

> II. Is Defendant entitled to resentencing where the trial court imposed sentence under an apparent misapprehension of the relevant law regarding boot-camp eligibility?

The Michigan Court of Appeals denied leave to appeal.  *People v Malkowski*, No: 268058

(Mich. Ct. App. March 6, 2006).  Petitioner then filed an application for leave to appeal in

the Michigan Supreme Court raising the two claims above and adding the following two

claims:

> III. Defendant-Appellant was sentenced as a habitual offender as the court lacked the authority to enhance his sentence for the prosecutor never filed habitual enhancement with the trial court pursuant to the statutory procedure?

> IV. Defendant-Appellant has been denied his Sixth Amendment right to effective assistance of appellate counsel and trial counsel as guaranteed by the Fourteenth Amendment U.S. Const, Mich Const 1963, Art 1, s 17, 20?

The Michigan Supreme Court issued an order denying leave to appeal. *People v Malkowski*, 476 Mich. 859; 718 NW2d 327 (2006) (table).

Petitioner filed a petition for writ of habeas corpus raising the following claims:

I. Petitioner is entitled to resentencing when the Michigan Statutory Sentencing Guidelines are scored incorrectly.

II. Petitioner is entitled to resentencing where the trial court imposes sentence under an apparent misapprehension of the relevant law regarding "boot-camp" eligibility.

III. Petitioner is entitled to re-sentencing when the trial court sentenced the Petitioner as a habitual offender, and no habitual offender notice or supplementation notice were filed with the trial court, therefore not allowing the petitioner to be sentenced as a habitual offender regardless of the number of prior felony convictions that the petitioner may, or may hot have had.

IV. Petitioner is entitled to resentencing when has been denied the effective and competent assistance of counsel at every stage of the Michigan state court proceedings.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel.  *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. §2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis,* 144 F.3d 429, 433 (6th Cir. 1998). Mere error by the state court will not justify issuance of the writ; the state court's application of federal law "must have been objectively unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362, 409 (2000) (internal quotes omitted)). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. §2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court explained the proper application of the "contrary to" clause: A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases . . .

A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

4

The Supreme Court held a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law . . . Under §2254(d)(1)'s "unreasonable application" clause, then a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly . Rather, that application must also be unreasonable.

*Id.* at 409, 410-11.  *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.  DISCUSSION

### A.  Scoring of Sentencing Guidelines

Petitioner alleges that the trial court erred when it scored Offense Variables (OV) 3, 4 and 19 of the Michigan Sentencing Guidelines. Petitioner contends generally that "[t]here were never any proofs offered in support of this scoring . . .  " (Pet. at 5). Respondent asserts that Petitioner's claim about OV 3, OV 4, and OV 19 is not cognizable on habeas review.

### 1.  State Law Claim

Questions of state sentencing law, and the scoring of state sentencing guidelines in particular, are not cognizable on federal habeas corpus review. *Miller v. Vasquez,* 868 F.2d 1116, 1118-19 (9th Cir. 1989); *Long v. Stovall,* 450 F.Supp.2d 746, 754 (E.D. Mich. 2006). As succinctly explained by the Sixth Circuit, "[a] state court's alleged misinterpretation of state sentencing guidelines and crediting status is a matter . . . of state concern only." *Howard v. White,* 76 Fed. Appx. 52, 53 (6th Cir. 2003)*,* citing *Travis v. Lockhart,* 925 F.2d 1095, 1097 (8th Cir. 1991); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir. 1988). "[F]ederal habeas corpus relief does not lie for errors of state law . . . " *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire,* 502 U.S. 62, 68 (1991). Therefore, to the extent that Petitioner raises his sentencing claim in the context of a state law violation, habeas relief is not warranted.

### 2.  Due Process Claim

To the extent Petitioner seeks to "federalize" his sentencing claim, by fashioning a due process argument, a sentence violates due process if it is based on "misinformation of constitutional  magnitude," *Roberts v. United States,* 445 U.S. 552, 556 (1980), or "extensively and materially false" information, which the defendant had no opportunity to correct. *Townsend v. Burke,* 334 U.S. 736, 741 (1948).

> Regarding Offense Variable 3, Defendant claims that the victim's statement in the PSI reflects that she sustained some injuries and that she sought an x-ray, but that this does not meet the 10 points reflecting bodily injury requiring medical treatment . . . Regarding Offense Variable 4, Defendant

> asserts that the victim did not suffer serious psychological injury requiring professional treatment and should not have been assessed 10 points for this variable . . .   Regarding Offense Variable 19, Defendant argues there is no evidence that Defendant used force or threatened force to interfere or attempt to interfere with the administration of justice.

(Order, dated 1/12/04, at 3-4).  However, addressing OV 3, "[a]n x-ray would be considered medical treatment therefore 10 points were accurately assessed." *Id.* at 3.   Regarding OV 4, "the PSIR apparently indicates that the victim indicated that counseling or therapy was necessary but has not sought professional treatment.  OV 4 may be scored at 10 points if the serious psychological injury may require professional treatment although the fact that treatment has not been sought is not conclusive." *Id.* at 3-4.  Finally, as for OV 19:

> The police report, the basis for the nolo contendere plea, indicates that the victim asked Defendant to take her to the hospital and he refused.  OV 19 indicates that 15 points may be scored if "the offender used force or threat of force against another person to interfere with or attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." 15 points were accurately scored for OV 19 as Defendant prevented the victim from going to the hospital.

*Id.*  at 4.  At sentencing, the trial court stated as follows:

> It's the sentence and judgment of the Court as to Count One, that carries a maximum of 10 years,  that I impose the minimum as recommended and is within the guidelines. Give you credit for the 88 days served . . . as to the Aggravated Domestic Violence, sentence you to serve 164 day[s] in jail with credit for 88 days served . . . [a]s to the Domestic Violence, the two misdemeanors, sentence you to 93 days in the county jail as to each count, and the 88 days credit time served.

(Tr. Sent., 10/18/04, at 17).

The Court concludes that Petitioner was not sentenced on the basis of "extensively and materially false" information, nor was his sentence based on "misinformation of constitutional magnitude,"  which he had no opportunity to correct. Therefore, Petitioner's

constitutional right to due process was not violated by the trial court's scoring of the state sentencing guidelines, and habeas relief is denied.

### 3. *Blakely v. Washington* Claim

To the extent Petitioner seeks to rely upon *Blakely v. Washington,* 542 U.S. 296 (2004), in which the U.S. Supreme Court has held that other than the fact of a defendant's prior conviction, any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt.  *Id.* at 301, citing *Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000).  The Supreme "Court has repeatedly held that, under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence."  *Cunningham v. California,* 549 U.S. 270, 81 (2007).  In other words, "the Federal Constitution's jury-trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant."  *Id.* at 274-75.

The problem with Petitioner's reliance on *Blakely* is that *Blakely* involved a trial court's departure from Washington's determinate sentencing scheme.  Michigan, by contrast, has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum sentence.  The maximum sentence is not determined by the trial judge but is set by law.  See *People v. Drohan,* 475 Mich. 140, 160-61; 715 N.W.2d 778 (2006); cert. den. sub nom *Drohan v. Michigan,__* U.S. __, 127 S.Ct. 592 (2006); *People v. Claypool,* 470 Mich. 715, 730, n.14; 684 N.W.2d 278 (2004) (both citing, MCL Mich. Comp. Laws §769.8).  "[M]ichigan's sentencing guidelines, unlike the

8

Washington guidelines at issue in *Blakely,* create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161.   Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range.   See *People v. Babcock,* 469 Mich. 247, 255, n. 7; 666 N.W.2d 231 (2003), citing Mich. Comp. Laws §769.34(2).   Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence.   *Claypool,* 470 Mich. at 730., n. 14.   Michigan's indeterminate sentencing scheme is therefore unaffected by the U.S. Supreme Courts holding in *Blakely. Drohan*, 475 Mich. at 164.

The decision in *Blakely* has no application to Petitioner's sentence.   Indeterminate sentencing  schemes, unlike determinate sentencing schemes, do not infringe on the province of the jury, of which there was none in this case since Petitioner pled *no contest*. See *Blakely,* 542 U.S. at 304-05, 308-09.   Because *Apprendi* and *Blakely* do not apply to indeterminate sentencing schemes like the one used in Michigan, the trial court's calculation of Petitioner's sentencing guidelines range did not violate his Sixth Amendment rights.

The maximum penalty for kidnaping in Michigan is life imprisonment. Mich. Comp. Laws §750.349(3).   Since Petitioner was sentenced to three to ten years' imprisonment and was released in less than five years, his sentence is well within the statutory maximum for his offense; and he is not entitled to habeas relief on any *Blakely* claims.   See *Stephenson v. Renico,* 280 F.Supp.2d 661, 669 (E.D. Mich. 2003).

### B.  Boot Camp Eligibility & Involuntary Plea

Petitioner asserts that he was misled into believing that he would be eligible for a

"boot camp" program or "special alternative incarceration," which would be taken into consideration at his sentencing. Petitioner further claims that his *nolo contendere* plea was therefore unintelligent, unknowing and involuntary because it was entered into under the erroneous assumption that he would be eligible for alternative sentencing. Petitioner's habeas claim is therefore two-fold: (1) Petitioner was wrongfully excluded from participating in a boot camp program after it was represented to him, pursuant to his *no contest* plea, that he would be eligible; and (2) Petitioner's plea was involuntary due to being misled into believing that he would be placed into a boot camp program as part of his sentence.

First, the issue of whether to place a criminal defendant into an alternative sentencing program is non-cognizable on federal habeas review, where petitioner does not allege that he was denied due process during the initial imposition of sentence. See *McQueary v. Blodgett,* 924 F.2d 929, 933 (9th Cir. 1991). Because Petitioner had no constitutional right to an individualized sentence, no constitutional error would occur if the state trial court failed to consider mitigating evidence on his behalf at sentencing in determining whether to sentence Petitioner to a term of incarceration or to an alternative sentencing program. *Hastings v. Yukins,* 194 F.Supp.2d 659, 673 (E.D. Mich. 2002). Petitioner did not allege that he was denied due process rights during the initial imposition of sentence. Therefore, habeas relief is not warranted on this issue.

Second, When a petitioner is convicted as a result of a plea, habeas review is limited to whether the plea was made voluntarily, intelligently, and knowingly. *See Broce*, 488 U.S. at 563; *Boykin v. Alabama*, 395 U.S. 238 (1969). A plea is voluntary if it is not induced by threats or misrepresentations and the defendant is made aware of the direct

10

consequences of the plea. *See Brady v. United States*, 397 U.S. 742, 755 (1970). The voluntariness of a plea "can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The plea is intelligent and knowing where there is nothing to indicate that the defendant is incompetent or otherwise not in control of his mental faculties, is aware of the nature of the charges, and is advised by competent counsel. *Id.* at 756. The plea must be made "with sufficient awareness of the relevant circumstances and likely consequences." *Id.* at 748. However,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action.

*Id.* at 757.

The Court finds that Petitioner's plea was knowing, intelligent and voluntary. Petitioner filed two motions to withdraw his plea. During the hearing on his first motion, which took place on September 20, 2004, Petitioner did not mention the issue of boot camp eligibility or alternative sentencing as being the basis for the seeking to withdraw the plea. Throughout that hearing he claimed the following: (1) he was innocent; (2) he was coerced into pleading *no contest;* and (3) he was rushed into accepting the plea offer prior to his preliminary examination. However, there were no allegations about Petitioner being misled about his boot camp eligibility or anything else about alternative sentencing options. In fact, when specifically asked about his knowledge regarding his sentencing recommendation, he stated that he was aware of the substance of the recommendation and that it was three to ten years' imprisonment. (Tr. Mot. at 51-52, 9/20/04.) At no time did Petitioner state that

11

boot camp or some other alternative sentence was a part of his plea agreement or that he was led to believe that that was the case.  The trial court ultimately denied Petitioner's motion.

However on December 12, 2005, another court hearing took place on the issue of withdrawing his plea.  It is at this hearing that Petitioner raised the issue of boot camp eligibility. He asserted that although his attorney did not guarantee that he would receive such an alternative sentence, nor that boot camp was part of the plea agreement, Petitioner claims that he was misled into believing that he was eligible for program.  Petitioner's trial counsel testified that her discussions with Petitioner about boot camp were based upon her general knowledge about boot camps, how certain convicted  defendants are not eligible based upon the nature of their crimes and their criminal history, and how he may or may not be eligible based upon his circumstances.  (Tr. Mot. at 7-9,18, 12/12/05).  His trial counsel further admitted that she conducted no independent research about whether or not Petitioner would be a candidate for alternative sentencing, and therefore, did not advise him one way or the other regarding his eligibility for any such program.  *Id.*  Additionally, Petitioner  admits that no one promised him anything other than what was in the plea agreement; there was no issue of boot camp or alternative sentencing raised during his plea colloquy; and he understood what his attorneys were telling him during the litigation, plea and sentencing process .  *Id.* at 27-28.  Even assuming that

Petitioner was told at some point that he was eligible for a boot camp program, applying the law to these facts, the Court finds that habeas relief is not warranted on this claim.

12

Petitioner has not demonstrated that he was incompetent or unaware of his circumstances at the time of his plea.  What is most telling is that the issue of alternative sentencing was not raised at his plea colloquy, nor at his first plea withdrawal hearing.  It was not until over a year later at his second plea withdrawal hearing that this issue arose as a basis to withdraw the *nolo contendere* plea.  This shows a plea withdrawal argument based upon a decision of regret  as opposed to a claim based upon an involuntary and unknowing decision to enter into a plea agreement.

### C.  Habitual Offender Notice

Next, Petitioner asserts that he is entitled to habeas relief because the habitual offender notice did not comply with statutory requirements. Specifically, he claims that the record fails to establish that he received written notice of the intent to enhance his convictions within twenty-one days of his arraignment as required by state law. *See* Mich. Comp. Laws § 769.13. In addition, Petitioner asserts that the Michigan Court of Appeals failed to adequately address this issue. The Respondent contends that these claims are state law issues which are not cognizable on federal habeas review.

First, the Court finds that although this issue was raised in Petitioner's application for leave to appeal in the Michigan Supreme Court, it was not raised before the Michigan Court of Appeals and is therefore an unexhausted claim and procedurally defaulted. Although there is a "strong presumption" in favor of requiring a state prisoner to pursue his available state remedies, it is still appropriate in some cases for the federal courts to address the merits of a habeas petition notwithstanding the lack of complete exhaustion. In *Granberry v. Greer*, 481 U.S. 129, 131 (1987) the Court stated that it would be in the

13

interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not raise a colorable constitutional claim. *Id.* at 134-135; Accord *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991). While Petitioner did not present his habitual offender notice claim to the Michigan Court of Appeals, the Court finds that a dismissal without prejudice for lack of exhaustion would not serve any useful purpose or further the interest of judicial efficiency and economy. The state law claim that remains unexhausted lacks merit and does not raise a federal constitutional issue. Therefore, in the interest of judicial economy, the exhaustion requirement and Petitioner's procedural default will be excused. The Court will review the issue on the merits.

As an initial matter, the Court finds that Petitioner's claim that he received untimely or inadequate notice of the habitual offender charge under Michigan law fails to state a claim which is cognizable upon federal habeas review. *See Tolbert v. LeCureaux*, 811 F.Supp. 1237, 1240-41 (E.D. Mich. 1993). It is well-settled that habeas relief may not be based upon a perceived violation of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, due process does not require advance notice that a trial on a substantive criminal charge will be followed by a habitual offender enhancement. Due process only requires that a defendant be given reasonable notice and an opportunity to be heard. *See Oyler v. Boles*, 368 U.S. 448, 452 (1962).

Moreover, the record indicates that Petitioner and defense counsel received sufficient notice of the habitual offender charge. Mich. Comp. Laws §769.13 requires that a defendant receive notice of the prosecutor's intent to seek a sentencing enhancement twenty-one days after the defendant is arraigned, or if the arraignment is waived, twenty-

14

one days after the information is filed.  The "Case Register of Actions" indicates that Petitioner was arraigned on April 6, 2004.  The Habitual Offender Information document is also dated April 6, 2004.  Petitioner claims that he did not receive the notice until two years later, on April 3, 2006. Therefore, Petitioner claims that the habitual offender notice, dated April 6, 2004, is not authentic and that the document was purposefully dated incorrectly in order to coincide with the arraignment date.   However, Petitioner provides no evidence to substantiate his claim.  The record reveals that Petitioner and defense counsel were well aware of the third habitual offender notice by the time of trial. This was sufficient to satisfy due process. See, e.g*., United States v. Hudspeth*, 42 F.3d 1015, 1024 (7th Cir. 1994) (information filed eighteen days after return of indictment and twenty-three days before plea gave adequate notice of prior convictions for enhanced sentence); *LaMere v. Risley*, 827 F.2d 622, 623 (9th Cir. 1987) (notice of intent to seek sentence enhancement given after conviction on underlying felony but three weeks before sentencing was sufficient).

Petitioner also had an opportunity to be heard on the habitual offender issue at sentencing.  In fact, he does not dispute that he had prior felony convictions which justified the habitual offender sentencing enhancement; just that the government did not comply with the notification time-line as set forth by statute. Petitioner has thus failed to establish that he was denied due process.  Accordingly, habeas relief is not warranted on this claim.

### D.  Ineffective Assistance of Trial & Appellate Counsel

Petitioner claims that both trial and appellate counsel conspired against him with the prosecutor in an effort to coerce him into entering into an unjust plea of *nolo contendere*.

15

Petitioner further claims that trial and appellate counsel erroneously failed to challenge the habitual offender notice issue. Finally, Petitioner argues that he pleaded with his appellate counsel to raise sentencing guideline scoring issues in his direct appeal, and she failed to do so.

For the same reasons set forth above, the Court will address the merits of Petitioner's ineffective assistance of trial counsel claim despite the fact that it was not exhausted before the Michigan Court of Appeals. Petitioner's ineffective assistance of appellate counsel was also not raised before the Michigan Court of Appeals. However, this portion of the habeas petition is not procedurally defaulted, because an appellate attorney cannot be expected to complain about his own ineffectiveness on appeal. *Combs v. Coyle*, 205 F.3d 269, 276 (6th Cir. 2000).

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, a he must satisfy a two-prong test. In *Strickland v. Washington,* the United States Supreme Court sets forth the two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland,* 466 U.S. at 687.

Second, the Petitioner must establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the Petitioner of a fair trial or appeal. *Id.* With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's

16

performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

To prove that his appellate attorney was constitutionally ineffective, Petitioner must show that his attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687. An appellate attorney need not raise every nonfrivolous argument urged by the appellant if counsel decides, as a matter of professional judgment, not to raise those arguments. *Evitts v. Lucey*, 469 U.S. 387, 394 (1985); *Jones v. Barnes*, 463 U.S. 745, 751 (1983). Furthermore, "it is difficult to demonstrate that an appellate attorney has violated the performance prong [of the *Strickland* test] where the attorney presents one argument on appeal rather than another. In such cases, the petitioner must demonstrate that the issue not presented 'was clearly stronger than issues that counsel did present.'" *Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

17

Addressing Petitioner's first issue, aside from his conclusory allegations, Petitioner has not presented any evidence of a conspiracy involving his trial and appellate counsel with the prosecutor in this case.   Second, based upon the above stated analysis of Petitioner's habitual offender notice claim, trial and appellate counsel's failure to raise the issue does not constitute ineffective assistance of counsel. Since the record indicates that Petitioner was timely notified of his sentence being enhanced, the issue is a frivolous claim. Also, Petitioner has been discharged from custody and served five years of his maximum ten year sentence.   Therefore, Petitioner cannot demonstrate ineffective assistance of counsel.

Regarding appellate counsel, Petitioner states: "the failure continued past the sentencing phase, when the petitioner's appellate counsel was not effective in raising substantial issues effecting the defendant's sentence, that the defendant told counsel he wanted raised." (Pet. at 10).  However, Petitioner fails to articulate what the issues are that are allegedly now barred from being presented.

Finally, Petitioner appears to imply a claim of prosecutorial misconduct  by making the following statements:

> [w]hen a prosecutor knows that there are substantial errors in the proceedings he is bound by the rules of discovery to make the defendant aware.  He is bound more so to make the court aware if errors, regardless of whether or not they provide the prosecution with an advantage in the proceeding.

*Id.*

\* \* \*

> The prosecutor . . . . is also bound to protect the rights of the accused, because the accused is still a citizen and the duty of his office requires him to protect the rights of all citizens.

18

*Id.* at 11.

However, this is the extent of any argument addressing the prosecutor's conduct in this case, with no direct application to the specific facts in this matter.

For Petitioner to prevail on his claim of prosecutorial misconduct, he must demonstrate that the prosecutor infringed on a specific constitutional right or infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The complained of conduct must be both improper and flagrant. *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007). In addition to Petitioner's prosecutorial misconduct claim not being exhausted, he has failed to show that the prosecutor infringed on any of his specific constitutional rights.  Therefore, habeas relief is denied relative to this claim.

### E.  Certificate of Appealability

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh*, 521 U.S. 320.  In denying the habeas petition, the Court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072 ("[Because] 'a district judge who has just denied a habeas petition . . . will have an intimate knowledge of both the record and the relevant

19

law,'" the district judge is, at that point, often best able to determine whether to issue the COA.)).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must "sho[w] that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In this case, the Court concludes that reasonable jurists would not debate that a plain procedural bar is present requiring the dismissal of Petitioner's petition, and no certificate of appealability is therefore warranted.

Reasonable jurists would not debate the Court's assessment of Petitioner's claims because clearly established federal law, as determined by the Supreme Court, demonstrates that his claims are legally deficient.

### F.  *In Forma Pauperis* on Appeal

Federal Rule of Appellate Procedure 24(a)(1) provides that a party to a district court action who desires to appeal *in forma pauperis* must file a motion in the district court. An appeal may not be taken *in forma pauperis* if the court determines that it is not taken in good faith. 28 U.S.C. §1915(a)(3).  The standard governing the issuance of a certificate of appealability is more demanding than the standard for determining whether an appeal is in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). Whereas a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant leave to proceed *in forma pauperis* if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3);

20

Fed. R. App. P. 24(a). "Good faith" requires a showing that the issues raised

are not frivolous; it does not require a showing of probable success on the merits. *Foster,*

208 F. Supp. 2d at 765.

The Court concludes that Petitioner should not be granted leave to proceed on

appeal *in forma pauperis* as any appeal would be frivolous.  See Fed. R. App. 24.

### IV.  CONCLUSION

Accordingly,

**IT IS ORDERED** that the "Application for Writ of Habeas Corpus" [Dkt. #1] is

**DENIED**.


Dated:  September 8, 2009

                                            S/George Caram Steeh
                                            GEORGE CARAM STEEH
                                            UNITED STATES DISTRICT JUDGE

| CERTIFICATE OF SERVICE |
|---|
| Copies of this Order were served upon attorneys of record on September 8, 2009, by electronic and/or ordinary mail. |
| S/Josephine Chaffee Deputy Clerk |